May it please the court, Davina Chan on behalf of Lorenzo Gonzalez-Robles. I'd like to reserve three minutes for rebuttal. Lorenzo Gonzalez-Robles has always maintained his innocence. He went to trial and he testified on his own behalf. He testified that he boarded a boat in Mexico as cargo. He acknowledged during direct examination that when he got on the boat he realized that the other cargo was marijuana and that he changed the fuel hose at the captain's direction. But he testified that his intent was not to smuggle marijuana but to be smuggled himself. Mr. Gonzalez was deprived of his right to have the jury assess his defense because one, the government told the jury that even if it believed Mr. Gonzalez, even if they credited his testimony in its entirety, he was still guilty. Was there an objection to that statement by the prosecutor? No, Your Honor, there was not. So we review it for? Plain error. And why? It's, the statement is slightly ambiguous. I think it's improper but it's slightly ambiguous. Why is it plain error? Remember, it's an argument by counsel. The judge gives, let's get to the instructions later but let's assume for purposes of my question that the judge properly instructs the jury. Why does this misstatement by count by the prosecutor, unobjected to, so much undermine the fairness of the proceedings that we should reverse based on it? So you're asking me about the third prong or the fourth prong or the third prong? Any prongs. Let's assume it's wrong. I'll give you, I'll start with that assumption that it's a misstatement. And the government says in its brief, we shouldn't have said that. It doesn't say it was wrong but it says we shouldn't have said that, that's not accurate. So let's assume we shouldn't have said it. Not objected to in the context of this case where I think the jury is properly instructed. I know you don't but we can come back to that in a second. Why is that plain error? Your Honor, I think it's plain error because it went to the heart of Mr. Gonzalez's defense. That was his whole defense. His defense was I did not have the intent to smuggle marijuana and the government in its rebuttal, so again, you know, the defendant does not have an opportunity to argue again, says, you know what, we think he did have the intent but even if he did not, he's still guilty. That's not exactly what they said. Well, what they said was, if you credit him. Even if you credit him, you can find. Even if you credit him, the defendant's intent was exact. Staying on the boat, recognize that even if you credit the defendant's story, okay, even if you credit him. Right. The defendant's intent was exactly aligned with the intent of the other people on the boat. Right, it's a misstatement but I'm just saying when you argue the misstatement, you ought to use the actual misstatement and not make it better than it was. The misstatement is if you credit him. Right. If you believe his testimony. Well, they didn't say if you believe, look, it's a bad statement. I don't want to fight about whether it's bad or good. I stopped you just because you made up a new statement which wasn't the one they actually made. The new one you made was much more prejudicial than the one they made. You were characterizing his statement, which is fair to do. Yeah. I was characterizing his statement, it's true, but what he did say was, if you credit his statement. But in fact, but in fact, counsel, isn't it true that if I read the instructions, you could have only convicted your client on the count where he was a part of the conspiracy to import a controlled substance? That's the only count he could have been, that's the only charge he could have been convicted of, correct? I'm sorry, if. If you follow the instructions. If I look at the instructions and I read them, there's nothing in there that said he could have been convicted of anything except a conspiracy to import a controlled substance, correct? So I don't see why your argument says, or that it says, seems to me the jury instructions mitigated this argument altogether, because they only allowed him to be committed or convicted, if you will, of a conspiracy to import a controlled substance. Your Honor, I think that in terms of my instructional argument, that is correct. But in terms of the prosecutor's closing argument, it went to each offense very clearly. They did not say, even if you believe his testimony, you can convict him of the conspiracy count in acquittal of the others. They said if you believe his testimony, his intent was exactly aligned with the other smugglers and that that was enough. Right. No, but that doesn't go to, that goes to whether or not, but isn't it, I'm sorry, that doesn't go to whether or not he would be convicted of smuggling himself. That goes to whether or not they proved the sufficient intent to smuggle marijuana, correct? Correct. Okay. So it doesn't go to your other argument that he might have been convicted of a different offense. No. It goes to the argument that the prosecution was misleading the jury to think they could convict him of this offense simply because of his mere presence on the boat. And hit, exactly. Okay. It goes to that. Now, with respect to that, and let's assume that that was the effect of what they said, why doesn't the judge's instruction that you have to show that he had the intent to smuggle marijuana in order to convict him mitigate that argument? I think it might have mitigated it if it had been brought to the court, the jury's attention that there was a conflict between this instruction and the court's instruction. But the reason it wasn't brought to the jury's attention, of course, is that the defense didn't, had the defense objected, the judge would have said, look, stop counsel. You know, here's what I'm going to tell the jury, or he would have sustained or something. But you didn't object. And so now the question is, is this one random statement by itself enough to undermine the fairness of the whole trial? And I believe it is. And this court has twice in the past year vacated convictions based on unobjected to err, erroneous statements in closing argument. And in both cases, the heart of the court's analysis was, did the erroneous statement go to the heart of the defense? This was his only defense, is that I did not have the intent. And the misstatement, and it wasn't really isolated or random, it was very much driven home. The misstatement was, even if you believe that, that he didn't have the intent to smuggle marijuana, he still had the proper intent for this case. He still had the requisite intent. In both Dex v. Jenkins and in U.S. v. Maheno, this course reversed, even when there was no objection, even when the jury instructions were perfectly proper, the court held that those instructions didn't correct the error, because government argument matters. And in this case, the government argued that even if you believe his testimony, he had the requisite intent. So this isn't like a case where there was some sort of random misstatement. It went directly to the heart of the defense. It was made in rebuttal when there was no opportunity to correct it. Now, the government argued in its answer in brief that the statement might have been correct. And that very argument undermines its argument that the court's instruction would have corrected it. The government at this time still believes that it could have been correct. Well, I guess the government's argument assumes that you don't give as broad a reading to credit his story as you do. When you say credit his story, and it's a fair reading, if you believe everything he said, the government's argument is that credit his story is that he got on the boat not knowing what was going on. Well, the government also argues as an alternate that it was a correct statement of law, that he didn't need to have the intent. But let's assume that's wrong. It still doesn't... the government makes a mistake in making that argument. But this is the only part of the argument that we're focusing on. No other part of the argument by the prosecutor was inappropriate, correct? Well, right now, yes. But in Deck versus... They may be making an inappropriate argument on appeal, but that doesn't help you in the journey. In Deck versus Jenkins, this court held that the fact that the government actually thought it was making a correct argument... But we don't know whether the prosecutor thought it was making a correct argument. We know appellate counsel tries to make an argument to us that it's correct. But that doesn't, you know, that doesn't get me anywhere with respect to trial counsel. All I'm saying is that if the government relies on the instruction given in this case, the instruction, I think, wasn't the one that we've been focused on, it was the next one, and says knowing is enough, then how could that instruction have cured the error? See, what I'm saying is that if the government points to the instruction that was given in this case and says that instruction shows that knowing is enough, intent is not required, how could that instruction have cured the error of the government's argument? At page... Does the instruction to the jury that it's not supposed to, that the only evidence, that the law comes from the court, and that you shouldn't, these counsel are just arguing the standard instruction, does that have anything to do? That has something to do with it, but again, in Deck versus Jenkins and U.S. versus Mahano, in Mahano it was a factual misstatement, and the court did instruct the jury, this is just this isn't facts, and yet this court reversed on plain error in that case, even though the defendant did not even raise the issue on appeal. And in Deck versus Jenkins, it was a state case, but the state court instructed the jury, the instructions are what I give you, and yet when the government misstated the element of intent in that case, this court granted habeas relief. Jury instructions matter, they certainly matter, but they're difficult and convoluted for me, and the argument matters a lot. Is the reference to story in the prosecutor's statement a reference back to the defense argument or to the testimony by Mr. Gonzales in this case? The defense closing argument was, let me give you a bunch of hypotheticals in effect, or let me give you a bunch of examples, and it's clear in context that this was a response to those, an inappropriate response perhaps, but a response to those. Is the story he's referring to Gonzales' lawyer's story or Gonzales' testimony? I'm sorry, I don't know that he says the word story. What he says is if you, oh I see, the defendant's story. Defendant's story, that's what I'm asking about. You say that means the defendant's testimony, and that's a reasonable interpretation of it, but a story was being told during closing by the defense lawyer. He said, so let me give you some examples of the kinds of ways it wouldn't violate the law. I don't think that the story can refer to that story because the government was quite clear. First they talk about the story. This is at ER 251. Let's talk about the hitchhiker, and he does a whole paragraph about how he. And the hitchhiker is the defense story. That's the story, but then he says, returning to the defendant's testimony, right? So after he's done talking about the defense lawyer's story, he says, let's return to, to the defendant's testimony. He is very clearly referring to the defendant's testimony. But then he says story again. That's why, that's why, I mean, I'm, it, it, it's, I'm not excusing anything that he does. I'm just trying to figure out in context what it was referring to. Because he pretty clearly before that said, the defense lawyer's told you some stories. Let's talk about them. And then he returns to the testimony and says, now let's go back, and then he says story again. The government frequently refers to defendant's testimony as stories. They call it claims. They call it stories. They say it's implausible and it's made up. But that is exactly the issue in this case. It's for the jury to determine whether the testimony was true or whether it was a story. The very fact that the prosecutor uses the word story doesn't turn his entire argument into a discussion about the story, because he very clearly delineates when he's talking about the story. There was talk about the hitchhiker, I submit to you, et cetera, et cetera. Returning to the defendant's testimony. And then he's talking about the defendant's testimony. May I ask you a question? Let's assume for the moment that it's improper, that it states the law as to the nature of the defense incorrectly, that it's important, that it's not cured by general instructions that don't refer to it, and that the fact that there was no objection does not deprive your client of the right to urge that this is an unfair trial. What effect does the rest of the trial have on this? Do we weigh this against how much evidence there is of his guilt? What is the relevance of the extent to which the jury would otherwise in any event have convicted your client, assuming there is? But I'm trying to see, in applying the standard, is it enough that he gives him the wrong law as to whether this would be a proper defense or whether he's saying that he's guilty even under his own theory? Is that the end of the case? No. Or do you weigh it in light of all of the other evidence of guilt? The court can only reverse if the defendant shows that there's a reasonable probability that the results of the case would have been different. Under plain error? Under plain error. Reasonable probability. Yes. Doesn't it have to undermine the fairness of the proceedings to be plain error? That's the fourth prong. So the fourth prong is that the court should exercise its discretion because it undermines the fairness of the proceedings. And again, the third prong, I think it's very clear that there's a reasonable probability that if the jury was not told that his defense was not a defense, that the outcome of the case may have been different. You only need one juror to have said, well, I believed him. And the outcome of the case would have been different. The government argued, even if you believed him, you can convict. So then the fourth prong, I'm sorry that I have to be so technical, but they are quite different. The fourth prong is the one about the fairness. Well, I guess our case law is not as technical as you want it to be. I don't believe that all of our courts finalize three prongs and then get to the fourth prong. I know you may want to make that technical argument. In fact, I've even tried to make it a couple of times with my colleagues. I don't think the court cases quite go that far. So go to the fourth prong and tell us what you've got to say. What I've got to say on the fourth prong is that it cannot be the law that a defendant who goes to trial, turns down all the deals, goes to trial, testifies, tells his whole story. So all the bad facts and all the good facts, all the facts that the government emphasizes in its closing argument came from his direct testimony. He knew it was marijuana. He changed the hose. It cannot be a fair trial if after having done all those things, the government is allowed to say, even if you believed those things, even if you credited it, he is still guilty. And I don't believe that this court has ever held that. Again, in Death v. Jenkins and U.S. v. Baha'i. Thanks. I appreciate your argument. That's good. I'd like to reserve the remainder of my, oh, I have no time. You don't have any time. We'll give you a little time to rebuttal. Good morning, your honors. May it please the court, Aaron Ketchel for the United States. Let me get to the question that was addressed primarily in counsel's previous argument, which is the nature of the particular isolated statements made in closing argument. I would first say that this is exactly what the Supreme Court warned against in Donnelly, which is taking isolated statements out of context, which are admittedly somewhat ambiguous. And certainly the government concedes may not have been phrased in the most artful way, but are ambiguous. And then assuming that the jury took the most damaging meaning from what the Supreme Court said, quote, is a plethora of less damaging interpretations. I also think it's important to illustrate how the record here is being mischaracterized. In defendant's reply at pages eight and nine, defendant quotes from the government's rebuttal argument at ER 251, and quotes a sentence that, quote, it's true whether you credit what defendant said yesterday. The next sentence of the government's rebuttal, which defendant omitted in his reply, was, quote, his intent was to get the boat and its cargo to the United States. And that's a fair argument. Nobody's arguing that that part of it is an incorrect statement. But if you go on to the bottom of page 251 in the ER, and again, the evidence suggests that you should not credit a story. And then it says the defendant's intent was exactly aligned with the others on the boat. And I think this argument is fairly read in context. And you admit it, that merely choosing to stay on the boat once he got on it, knowing there was marijuana on it, was enough to establish his intent to smuggle it. That's not the law, is it? Well, that was not the argument, Your Honor. I think the argument went beyond that. And I think it's important. So there's other parts of the argument that I think mitigate what was said here. But doesn't that statement say to the jury, look, even if you just believe him, even if he just got on the boat, didn't know what was going to be there, and it's too late to get off, that you can convict him based on his story because that shows his intent to smuggle marijuana. Let me address exactly that point. And I'm setting aside the question of the government's primary argument, which was the story was incredible. Right, right. And you said that's why I say there's stuff here that mitigates this. But isn't that the counsel – I gave counsel a rough time because she characterized the argument rather than read it. But isn't her characterization correct? I think it went beyond that, Your Honor. The government's argument with respect to crediting the defendant's story was that even if you credit the defendant's story that he showed up to the beach on that night with the intent of being smuggled, that was what the government said, go ahead and credit that story. Then what the government argued was at the moment that the defendant boarded the boat, he knew that there were drugs on the boat. Even after the defendant boarded the boat, he voluntarily elected to stay on the boat even though he witnessed someone else disembark. There was no threat of violence. There was no evidence of force of any kind to keep the defendant on the boat where he clearly had the ability to leave the boat. So your argument depends on when you say credit his story, how much of his story you're crediting. Because he also testifies, I had no intent to smuggle marijuana. I didn't think I could leave. That's part of his story. If you credit that. I understood what you were just saying to mean that if he got on the boat, found out there was marijuana, but wanted to be smuggled and couldn't care less whether the marijuana arrived, that he's guilty. But this is an inference. Is that your argument? And one step further, that the defendant took actions after getting on the boat, the defendant then became a critical member of the crew in managing the fuel lines to keep the boat running. And it is the government's position. Your argument is that if he went there intending to be smuggled to the United States, found out when he got on the boat that it was also importing marijuana, helped the boat get there so that he wouldn't drown or that he would get there to be smuggled, that he is guilty as long as he moved the wires or the rubber or whatever it is to help get the boat there. And I think the point here is that this is an inference. Is that correct, what I just said, that he would then be guilty even if he had no interest at all in whether the marijuana arrived? It is the government's position that that is a fair inference for the jury to draw. I like the government's position that said this was a misstatement, but in the context of the whole argument we weren't trying to mislead the jury. And now you're saying to us, oh no, this is exactly what we're trying to tell the jury. We're trying to tell the jury that even if he got on the boat with no evil intent and even if he believed he couldn't leave, if he moved the gas lines along the way he was part of a conspiracy to smuggle marijuana. Do you really want to say that? Yes or no, do you want to say that? I think twice about that. Because I'm having a tough time with that argument. I don't know how that argument could make sense. I like the first argument. We made a mistake and that is where we were going. But if you're really going where you're going, I want you to think twice before you say, you bet, go for that judge. You're not going to win this case by persuading me that a guy can be convicted if he gets on the boat with no evil intent, thinks he can't leave, and in the middle of the ocean somebody asks him to switch the gas lines. So you want to keep making that argument, you've got nine minutes, you can make it, but I'd make a different one. Let me just make a quick point on that. Because I think the point is how much you're crediting the defendant's intent for the duration of the trial. Right, and you say if you credit the story, and that's the problem. His story was, I got on there, I didn't care. When I got on there, I didn't think I could leave. I didn't care what they were taking. They were smuggling me. I helped them smuggle me by moving the gas lines. That's his story. What the government's argument was was that we were crediting the story up until the point that he boarded the boat. Okay, and that's a, I understand that. I understand that. I didn't understand all the rest of what you've been saying. And I think my point was, my only point was that at the point that that intent changed as he boarded the boat, then the government presented evidence that the jury could draw an inference that the intent had in fact changed. And they said, boy, not only can I get myself there, but I could really help them import marijuana. That's what happened. That was what the government decided. That was what the government argued. I keep telling you to leave this argument, and you keep making it, but if you want to keep making it, we'll keep picking it apart. Your defense, your theory in this case was, oh, Bull, he's a mechanic. Every boat has a mechanic. We have expert testimony that every boat has a mechanic. He got on the boat to be the mechanic, and that's why he was there. And then you got bogged down in responding to these stories. And what troubles me now is you're saying, oh, we didn't get bogged down at all. That was our theory. Our theory was that what we said was correct. Yeah, and if that's your theory, then we've got a problem. Well, the theory, the alternative theory, and again, the primary theory was that, as Judge Horowitz, you've noted, the government said don't credit any of this story. This makes no sense. It is completely implausible. But even if the fact is that he got on the boat not even knowing there was marijuana because he wanted to get smuggled, and then he found there was marijuana on the boat and said, boy, these people are crazy, but I'm on this boat, and I want to get to the United States, and so I've got to do whatever I can to keep the boat adrift in getting there, and I hope they all get convicted later when they find out they smuggled marijuana. He would still be guilty. Well, the difference here is that that's not what the record was. The record was that he did have an opportunity to get off the boat, and it is under that factual basis that the government argued his intent changed. Let's go back to your alternative argument, which is we shouldn't have said this, but it didn't prejudice the trial. Make that argument to me because you're not going to win me with the first one. Okay. Well, it didn't prejudice the trial in many respects. The first is that, as the court noted, the jury was properly instructed as to what the conspiracy instruction was. There is no question that the jury received the proper elements of conspiracy, and the conspiracy instruction told the jury that it needed to find beyond a reasonable doubt that the defendant intended to accomplish the purpose of the conspiracy. Does it make a difference that the closing argument spent, closing in rebuttal, if you look at all the pages, almost all of it was his story is incredible and you shouldn't believe it? Absolutely, Your Honor. To me, if this were your only argument in closing, it would be different than if you made these alternative arguments. Does it make a difference? Absolutely, Your Honor. And as I said, the government's primary thrust certainly throughout the whole trial and at closing was that the arguments were incredible. They did not make sense. They did not line up with putting an unknown stranger on a boat with a million dollars worth of drugs, which the person clearly saw was there, and had the potential to sabotage a very valuable drug operation. That strains credulity in and of itself. Moreover, the maritime expert testified in his vast experience in these cases that he had never seen a ponga boat have both drugs and migrants on the same boat. There were no mixed loads. And for the reason we discussed, it makes no sense to put someone who is not involved in the drug conspiracy on a boat with a million dollars worth of drugs who has the potential to sabotage that drug shipment. And so the government's primary argument the entire time was that this makes no sense, this falls within the modus operandi of maritime drug smuggling operations. And for that reason, we view that that mitigates any concern about the ambiguity. Let's go back to Judge Reinhart's question. Let's assume that we found that this was an erroneous statement, that it hadn't been waived or forfeited by failure to object, and we were looking at it on the merits. Do we look at the strength of the evidence in the case? Do we not look at the strength of the evidence in the case? What do we do? I think you look at the strength of the evidence in the case because I think it goes to what prejudice the defendant suffered here. And I think it's also worth noting that in counts 3 and 4, which are the possession with intent to distribute case, and there is no argument regarding the elements of the instruction, the jury, in order to convict the defendant of those counts, found the defendant either possessed or aided and abetted the possession of the drugs with the intent to distribute them. So the jury had to have found that the defendant acted intentionally with those drugs. We all know that. The question is whether or not the government misled them about what intent meant. If the jury hadn't found it, we wouldn't be here. Well, but I think that there was no argument about what intent meant. It was simply an inference that the government was asking the jury to draw with respect to the proper instructions and whether the defendant's intent changed at a certain point in time. The alternative argument, which I don't care to press anymore because I understand the court's skepticism with that argument. I also didn't understand it from your brief. Your brief said, shouldn't have said that. We don't think it was a versatile error, but shouldn't have said it. And now I'm getting an argument that said, well, maybe it was okay to say it. And your opponent said, if the government really thinks this was okay, then we may have a different case. And I apologize if I haven't been clear. The government maintains the position that this was inartfully phrased. It absolutely could have been phrased in a less ambiguous way. Well, that's almost always true. Inartful is not much of a legal term. It's either erroneous or it's not. It's just inartful, but it doesn't violate the rules. That's one thing. If it's erroneous, that's worse than if it's inartful. Well, I think, Your Honor, I think what our position is is that it's ambiguous. And we understand how there could be a problematic interpretation of that ambiguous statement. But, again, under Donnelly, the Supreme Court has said, do not assume the worst of an isolated statement in a closing argument. See, if I were going to rephrase your alternative argument, it would be slightly different, which is he may have gotten on the boat with no bad intention. He had a chance to leave but said to himself, if I have to smuggle marijuana in order to get into the United States, that's the way I'll do it. And that's a different argument than the one that I heard you making today, which is that if he got on the boat with fine intentions and just later moved the hoses around, that was enough. Your Honor, I entirely apologize if that is how I sounded because that is not – I was trying to convey exactly what Your Honor said and apparently not how I came across. And that's what counsel said in closing. He said, you know, when he got on – even if he – when he arrived at the boat, he didn't have a bad intention. If he said to himself, uh-oh, the only way I can get to the United States is by helping these guys smuggle marijuana, well, then I'll do it because that's how I want to get there. That would violate the law, I think. And I don't know whether the evidence supports that, but that would violate the law. That's not his story. That's not the story he – Well, and again, that is what the government was arguing. And I apologize if I misconstrued that or I misstated it here because that is what the government was arguing. All right. Thank you, counsel. Thank you, Your Honors. You said you have a little over a minute – no, a little under a minute. You're over a minute, but I'll still give you two minutes. Hmm? I've got three things to say. One, the very fact that the government is still arguing that what it just argued could result in someone's lawful conviction shows you that the trial was unfair. That is what they said to the jury. That's what they said to this court, and that is a misstatement of the law. So that's the first thing that I want to say. The second is I understand Judge Hurwitz' belief that – the fact that they had two theories. One is the entire defense is hoping – I don't have any belief. I'm just asking. Okay. The idea that that mitigates the argument. This court has actually held that that makes it worse. In Deck v. Jenkins, it was precisely the same sort of scenario where the prosecutor argued, on the one hand, you can't believe his story. His story is ridiculous. But that even if you believe, you can convict under this other scenario. And this court says, the prosecutor's repetition of the phrase, even if, unquestionably shows that he presented alternative theories of the case on which the jury could rely to convict Deck, rather than making a passing incorrect statement of his primary argument. So this court has held that when the government presents two theories, one is the defense is baloney, and the second is even if you believe the defense, he's still guilty, that that renders a trial unfair. And that's in Deck v. Jenkins at 126. And finally, my third point is, the government gets up there and tells you that there are these facts from which the jury could infer that he had the intent. And I do not dispute that. I dispute his interpretation of the facts, but I do not dispute that the jury could have inferred that. But that is for the jury to decide. And in this case, the government's argument told the jury, you don't need to decide that. The very fact that he got on the boat with the intent to be smuggled, he learned that there was marijuana, and then later he changed the hose, that's enough. And that renders this trial fundamentally unfair. A defendant cannot go to trial and tell his whole story, and then have the government say, even if you believe it, convict. Thank you, counsel.
judges: Reinhardt, Smith, Hurwitz